IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM M. WALLS
JAMES J. OAKES, and
FRANCIS X. OAKES,

No. 4:20-CV-00782

(Judge Brann)

Plaintiffs,

v.

REPSOL OIL AND GAS USA, LLC,

Defendant.

MEMORANDUM OPINION

SEPTEMBER 11, 2020

I.     BACKGROUND

This case involves a contract dispute between three Pennsylvanian

landowners and one Texan oil and gas company over an oil and gas lease

agreement (the "Lease") governing the use of land located in Tioga County,

Pennsylvania.  In 2002, Plaintiffs entered into the Lease with Repsol's

predecessor-in-interest, Victory Energy Corporation.  Repsol now operates the

Chicken Hawk Unit, a designated natural gas production unit, of which Plaintiffs'

property is part.

On March 12, 2020, Plaintiffs William M. Walls, James J. Oakes, and

Francis X. Oakes (hereinafter "Plaintiffs"), filed a one-count complaint seeking

declaratory judgment against Defendant Repsol Oil & Gas USA, LLC (hereinafter

"Repsol"), in the Court of Common Pleas of Tioga County, Pennsylvania.  On

May 13, 2020, Repsol timely removed the instant action to this Court, invoking

federal diversity jurisdiction.   That day, Repsol also filed a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

On June 22, 2020, Plaintiffs filed their brief in opposition to Repsol's motion to

dismiss, as well as a separate brief in opposition to Repsol's notice of removal.[1]

Both motions are now ripe for disposition.  The Court addresses each motion

in turn; for the reasons that follow, Plaintiffs' motion to remand is DENIED, and

Repsol's motion to dismiss is GRANTED.  However, Plaintiffs will be provided

leave to amend the complaint, if they care to do so.

## II.    DISCUSSION

### A.    Motion to Remand

#### 1.    Motion to Remand Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction, may be

removed by the defendant or defendants, to the district court of the United States

for the district and division embracing the place where such action is pending."[2]

The two primary types of "original jurisdiction" that § 1441(a) contemplates are

diversity jurisdiction and federal question jurisdiction.  Moreover, "federal removal

---

[1]   For clarity, the Court treats this separate opposition (Doc. 10) as a motion to remand the
action to state court.  Repsol has treated this document similarly.

[2]   28 U.S.C. § 1441(a).

ancial

jurisdiction . . . is determined (and must exist) as of the time the complaint is filed and removal is effected."[3] "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court,"[4] and "any doubt about the right of removal requires resolution in favor of remand."[5] "It remains the defendant's burden to show the existence and continuance of federal jurisdiction."[6]

### 2.    Analysis

Plaintiffs contend that the instant action must be remanded to state court for lack of subject matter jurisdiction.  Plaintiffs claim that this case does not satisfy the amount in controversy requirement of 28 U.S.C. § 1332.[7]  I disagree.  Repsol has met its burden of establishing the amount in controversy.

In certain removal cases, the amount in controversy is determined based on the "complaint filed in the state court."[8]  In the instant matter, however, Repsol was entitled to assert an amount in controversy in its notice of removal,[9] and did so, stating that this action implicates more than $75,000.[10]  A defendant's notice of

---

[3]   *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

[4]   *Federico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (Aldisert, J.).

[5]   *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

[6]   *Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

[7]   Plaintiffs do not dispute that there is diversity of citizenship as required by 28 U.S.C. § 1332. The Complaint alleges that Plaintiffs are all Pennsylvania citizens, while Repsol is a citizen of Texas.  Doc. 1, Ex. 1 at ¶¶ 1-4.

[8]   *Samuel-Basset v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).

[9]   28 U.S.C. § 1446(c)(2).

[10]   Doc. 1 at ¶ 15.

removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[11]  If the plaintiff challenges removal, the court must evaluate whether the defendant has shown "by the preponderance of the evidence that the amount in controversy exceeds" $75,000.[12]

In evaluating whether the amount in controversy requirement has been satisfied, the Court considers all relief sought by Plaintiffs – both monetary and nonmonetary.[13]  The amount in controversy "is measured by the value of the object of the litigation."[14] "The court must measure the amount [in controversy] not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."[15]  "Estimations of the amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated."[16]

A reasonable estimation of the amount in controversy, taken from the Plaintiffs' perspective,[17] supports the conclusion that federal jurisdiction exists.

---

[11]   *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

[12]   *Id*. at 88.

[13]   *See Congregation of Beth Israel of Mahanoy City, PA, v. Congregation Eitz Chayim of Dogwood Park*, 2017 WL 3392353 (M.D. Pa. Aug. 7, 2017) (Mariani, J.) (declining to accept the estimate from the plaintiff's complaint as the amount in controversy).

[14]   *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016).

[15]   *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (internal quotation marks omitted).

[16]   *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004).

[17]   *See e.g.*, *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 n. 15 (3d Cir. 2016) (noting that the calculation of the amount in controversy is performed from the perspective of the plaintiff).

First, Plaintiffs seek declaratory judgment defining the parties' rights under the Lease and further requiring that Repsol: (1) cease using the pipeline to transport gas from property outside the Chicken Hawk Unit and other non-neighboring lands; (2) remove the pipeline; and (3) abstain from entering Plaintiffs' property except to remove the pipeline.[18]  Second, Plaintiffs seek declaratory judgment from this Court stating that Plaintiffs are entitled to compensation from Repsol for "all timber damages and additional surface damages" from the installation of the pipeline at issue, and for any further damages "to be incurred as a result of any necessary removal and reclamation operations."[19]  Plaintiffs allege that they are entitled to monetary compensation of at least $50,000 (and up to $74,999).[20]  The nonmonetary requests additionally carry a certain value from the Plaintiffs' perspective, and the Court is required to conduct an analysis of whether or not the value of those requests, combined with the monetary compensation Plaintiffs seek, exceeds $75,000.  I find that it does.

Repsol notes (and Plaintiffs concede) that Plaintiffs offered to grant Repsol the rights at issue in this case, in exchange for more than $75,000.[21]  Plaintiffs claim that those requests were "pie-in-the-sky" or "wishful" amounts and "not reflective of the objective value" of the proposed agreement.[22] While the Court

---

[18]   Doc. 1, Ex. 1 at Wherefore Clause (a)-(d); (f).
[19]   Doc. 1, Ex. 1 at Wherefore Clause, (e).
[20]   *Id.* at ¶ 9.
[21]   Doc. 13 at 6.
[22]   Doc. 10 at 10.

recognizes that negotiations and offers between parties are often strategic, the Court is also mindful of the fact that if the "objective value" of the easement rights at issue is worth even one-third of what Plaintiffs sought from Repsol, this would satisfy the amount in controversy requirement, when taken together with Plaintiffs' assertion that they are entitled to at least $50,000 in compensatory damages.

Repsol has also provided evidence that complying with the relief sought by Plaintiffs would cost more than $100,000.[23]  While Repsol's costs are not dispositive to the jurisdictional question, they provide some insight into the value Plaintiffs could extract "in exchange for [their] asserted rights."[24]  Taken together, the above facts are sufficient for Repsol to meet its burden to show that the amount in controversy requirement is satisfied.

Therefore, Plaintiffs' motion to remand will be denied.

## B.    Motion to Dismiss

### 1.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[25] and "streamlines litigation by dispensing with needless discovery and

---

[23]   Doc. 13, Ex. A at ¶ 10.
[24]   *Klaphake v. Columbia Gas Transmission, LLC*, 2018 WL 1736791 at *3 n. 4 (W.D. Pa. Apr. 11, 2018).
[25]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

factfinding."[26]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[27] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[28]

Following the Roberts Court's "civil procedure revival,"[29] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[30] and *Ashcroft v. Iqbal*[31] tightened the standard that district courts must apply to 12(b)(6) motions.[32]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[33]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] "Although the plausibility standard does not impose a probability requirement, it does require a

---

[26]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).
[27]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).
[28]  *Neitzke*, 490 U.S. at 327.
[29]  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).
[30]  550 U.S. 544 (2007).
[31]  556 U.S. 662, 678 (2009).
[32]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[33]  *Id.*
[34]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[35]  *Id*.

pleading to show more than a sheer possibility that a defendant has acted unlawfully."[36] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[37]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[38] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[39]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[40] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[41] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[42]

---

[36] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[37] *Twombly*, 550 U.S. at 556.

[38] *Iqbal*, 556 U.S. at 679.

[39] *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[40] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[41] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[42] *Iqbal*, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court
> reviewing the sufficiency of a complaint must take three steps. First, it
> must tak[e] note of the elements [the] plaintiff must plead to state a
> claim. Second, it should identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of truth.
> Finally, [w]hen there are well-pleaded factual allegations, [the] court
> should assume their veracity and then determine whether they plausibly
> give rise to an entitlement to relief.[43]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is

limited to consideration of the complaint itself."[44]  Typically, to consider materials

outside the complaint, a motion to dismiss must be converted to a motion for

summary judgment.[45] However, "[c]onsideration of materials outside the complaint

is not entirely foreclosed on a 12(b)(6) motion."[46]  It is permissible to consider full

text of documents partially quoted in complaint.[47]  It is also permissible to consider

documents relied upon by plaintiff in drafting the complaint and integral to the

complaint.[48]  "However, before materials outside the record may become the basis

for a dismissal, several conditions must be met."[49]  "For example, even if a

document is 'integral' to the complaint, it must be clear on the record that no

---

[43]   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[44]   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[45]   *See id.* and Fed. R. Civ. P. 12(d).
[46]   *Faulkner,* 463 F.3d at 134.
[47]   *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996).
[48]   *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).
[49]   *Faulkner*, 463 F.3d at 134.

dispute exists regarding the authenticity or accuracy of the document."[50]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[51]  In this matter, I find that these conditions have been met, and will consequently consider the attachments.

### 2.    Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

In 2002, Plaintiffs entered into an oil and gas lease with Repsol's predecessor-in-interest, Victory Energy Corporation.[52]  Since that time, Repsol has succeeded to the Lease.  Repsol operates a designated natural gas production unit (the Chicken Hawk Unit), within which the Lease's acreage is unitized.[53]  Repsol and its predecessors-in-interest "consolidated, unitized and pooled" the Lease's property with neighboring lands to form the Chicken Hawk Unit.[54]

In approximately October 2019, Repsol began construction of a pipeline on Plaintiffs' property.[55]  Some time after Repsol began installing the pipeline, Repsol and Plaintiffs entered into negotiation for a proposed "Pipeline Right of Way Agreement" which would "authorize the installation" of the pipeline.[56]  On or

---

[50]  *Id. See also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).
[51]  *Faulkner*, 463 F.3d at 134.
[52]  Doc. 1, Ex. 1 at ¶ 5.
[53]  *Id*. at ¶ 14.
[54]  *Id*. at ¶ 25.
[55]  *Id*. at ¶ 62.
[56]  *Id*. at ¶¶ 47, 52.

around November 1, 2019, negotiations were terminated after Plaintiffs rejected Repsol's offers.[57]  Repsol continued the installation of the pipeline, completing the project in December 2019.[58]

Plaintiffs claim that the pipeline transports natural gas from production units that "do not unitize any of the Lease's leasehold acreage" and from other production units that do not neighbor the Lease's leasehold.[59]

Plaintiffs also allege that the construction and installation of the pipeline was not authorized by the Lease, and that they never granted Repsol the right to construct the pipeline.[60]  Likewise, Plaintiffs allege that the Lease does not permit Repsol to transport gas from non-unitized and non-neighboring lands, and that therefore, Repsol is in violation of the Lease.[61]

### 3.    Analysis

Plaintiffs seek declaratory judgment pursuant to 42 Pa.C.S.A. § 7531 *et seq.*[62]  Applying contract interpretation principles under Pennsylvania law, the Court finds

---

[57]  *Id*. at ¶ 61.

[58]  *Id*. at ¶ 62.

[59]  *Id*. at ¶¶ 67-68.

[60]  *Id*. at ¶ 64.

[61]  *Id*. at ¶¶ 78-79.

[62]  As this Court and others in this Circuit have noted, an action for declaratory judgment is considered procedural, rather than substantive.  *See Lien Asserted by Rider Ins. Co. as to Acc. of May 11, 2011 v. Rider Ins. Co.*, 2013 WL 4083322 at *1 (M.D. Pa. Aug. 13, 2013) (Munley, J.); *Munich Welding, Inc. v. Great Am. Ins.*, 415 F.Supp.2d 571, 574 (W.D. Pa. 2006).  Federal courts sitting in diversity are required to apply federal procedural law.  *See e.g.*, *Everett Cash Mut. Ins. Co. v. Ins. Corp. of Hanover*, 2008 WL 4453113 at *3 n. 7 (M.D. Pa. Sept. 30, 2008) (Conner, J.).  Therefore, as a technical matter, this action proceeds under the federal Declaratory Judgment Act (28 U.S.C. § 2201).  The analysis leads to the same result as it would under the state declaratory judgment statute, and I apply state substantive law to evaluate the motion to dismiss.

that the language of the Lease is clear and that Repsol has not violated the Lease by installing and operating the pipeline in the manner in which it has.

"The interpretation of a contract is ordinarily a matter of state law to which we defer."[63]   The Supreme Court of Pennsylvania has explained: "[t]he principles that guide this inquiry are well-settled. The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties."[64]   Where a written contract exists, "the intent of the parties is the writing itself."[65]   If the contractual language is clear, the Court must determine the intent of the parties "from the document itself."[66]   This is a task for this Court as a matter of law.[67]   When the terms of the contract are unambiguous, no further evidence as to the intent of the parties is required or admissible.[68]

Contractual language is ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense."[69]   This is an objective standard; a contract "is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction."[70]

---

[63]   *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 468 (2015).

[64]   *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462 (Pa. 2006).

[65]   *Id.*

[66]   *Id.*

[67]   *Id.* at 481.

[68]   *See id.*

[69]   *Id.*

[70]   *Bohler-Uddeholm America, Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (quoting *Samuel Rappaport Family Partnership v. Meridian Bank*, 657 A.2d 17, 21-22 (Pa. Super. 1993).

Plaintiffs request a variety of relief in the form of declaratory judgment. Those requests can effectively be placed into two categories: nonmonetary relief and monetary relief. The Court addresses each in turn.

### a. Under the Lease, Repsol is Entitled to Construct a Pipeline and Transport Natural Gas From Other Lands.

Plaintiffs argue that, under the Lease, Repsol may only install a pipeline "to transport gas from units including the Lease's acreage."[71] Plaintiffs further assert that the Lease does not allow Repsol to build a pipeline to "transport gas from multiple distant production units that do not include any of the Lease acreage and are not neighboring and conjointly developed lands with Plaintiffs' leasehold."[72] Accordingly, Plaintiffs request declaratory judgment from this Court ordering that Repsol is in violation of the Lease and must: (1) cease using the pipeline to transport gas from property outside the Chicken Hawk Unit and other non-neighboring lands; (2) remove the pipeline; and (3) abstain from entering Plaintiffs' property except to remove the pipeline.[73]

Plaintiffs' argument fails as a matter of law, based on a plain reading of the Lease itself. The Lease grants Repsol the rights of:

> Drilling, producing, and otherwise operating for oil and gas and their constituents, including the right to conduct geophysical, seismic and other exploratory tests, *and of laying pipe lines*, and building tanks,

---

[71] Doc. 11 at 8.
[72] *Id.*
[73] Doc. 1. Ex. 1 at Wherefore Clause, (a)-(d); (f).

> roads, stations, and electric power lines, houses for valves, meters, regulators and other appliances, *with all other rights and privileges necessary, incident to or convenient for the operation of this land alone and cojointly with neighboring lands[.]*[74]

Plaintiffs claim that this provision prohibits Repsol from installing a pipeline unless the pipeline transports gas exclusively from units of land including the Lease's acreage or neighboring lands.[75]  Such a limitation on Repsol's right to install pipes is simply nowhere to be found in the Lease.  Instead, Plaintiffs agreed to a contract granting the lessee (now Repsol) authority to perform a set number of tasks, including "laying pipe lines."[76]  Beyond those enumerated rights, Plaintiffs gave Repsol "all other rights and privileges necessary, incident to or convenient for" the operation of the Lease's acreage and neighboring lands.  In other words, only the rights and privileges not specifically enumerated in the Lease must be "necessary, incident to or convenient for" the operation of the land.  This interpretation is cleanly supported by the text itself, which is not "reasonably susceptible of different constructions."[77]  As Repsol notes, if the parties intended that *all* rights and privileges be so-limited, there would be no reason to enumerate any rights at all.[78]  Instead, the Lease is clear that some rights were intended to be limited, while others were not.  The Court notes further support in the Lease's use

---

[74]   Doc. 1, Ex. 1 at 32 (emphasis added).
[75]   Doc. 11 at 6.
[76]   Doc. 1, Ex. A at 32.
[77]   *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 201 (1986).
[78]   Doc. 4 at 6.

of a comma separating the enumerated rights from the more restricted "other rights," again suggesting a distinction between the two.

Based on the text of the contract, Repsol's right to lay pipe lines on Plaintiffs' property is not subject to Plaintiffs' proposed restriction. For the same reasons, Repsol's right to transport gas from properties outside the Chicken Hawk Unit or neighboring lands is also not restricted by the "necessary, incident to or convenient for" clause. As such, Repsol is not required to cease using the pipeline or to remove it.

### b. Plaintiffs Have Not Sufficiently Pled That They Suffered Compensable Damages Under the Lease.

Plaintiffs also seek an order stating that they are entitled to compensation for "all timber damages and additional surface damages that occurred during [the pipeline's] construction operations and to be incurred as a result of any necessary removal and reclamation operations."[79] Plaintiffs' allegations of timber and other surface damages are far too scant to survive Repsol's motion to dismiss.

Paragraph 17 of the Lease only requires compensation for damages to "cultivated crops or fences" as a result of Repsol's operations.[80] Plaintiffs do not explain what damages occurred, or that these damages would be compensable under the Lease. Plaintiffs only mention any damages at the tail end of the

---

[79] Doc. 1, Ex. 1 at Wherefore Clause, (e).
[80] Doc. 1, Ex. 1 at 34.

complaint, when they seek judgment from this Court.[81]  Without alleging facts to support their conclusory request for compensation, Plaintiffs have not shown that the claim is "plausible on its face."[82]  Therefore, the Plaintiffs' request seeking compensatory damages must also be denied.

## III.    CONCLUSION

Repsol's Motion to Dismiss pursuant to Rule 12(b)(6) is granted.  Plaintiffs are, however, granted leave to amend.  "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[83]  "Circuit case law, however, holds that leave to amend must be given in this situation as well."[84]  It is well settled in this Circuit that leave to amend should be "freely granted."

As such, Plaintiffs will be given fourteen days from today's date to file an amended complaint, should they choose to do so.  If no amended complaint is filed, the action will be summarily dismissed pursuant to Federal Rule of Civil Procedure 41(b).  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[81]  Doc. 1, Ex. 1 at ¶ 94; Wherefore Clause.
[82]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[83]  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997) ("*Burlington*");
[84]  *Id.*